OPINION
This appeal is taken from a final judgment of the Lake County Court of Common Pleas. Appellant, David L. Swick, appeals from his conviction and sentence on three counts of gross sexual imposition following a trial by jury.
The ensuing facts are relevant to this appeal. On April 18, 1997, appellant was indicted by the Lake County Grand Jury on three counts of gross sexual imposition, in violation of R.C. 2907.05. Appellant subsequently entered a plea of not guilty to the charges and retained an attorney to represent him.
Through counsel, appellant filed a motion to suppress a pre-arrest statement made to authorities. As grounds for the motion, appellant argued that he did not voluntarily, knowingly, or intelligently waive his rights to counsel and against self-incrimination before making the statement. The trial court held a suppression hearing on July 8, 1997, and issued a decision the next day denying appellant's motion.
The matter proceeded to trial on July 14 and July 15, 1997. During the course of the proceedings, both sides presented evidence and testimony in support of their respective positions. At the conclusion of the second day, the jury returned a verdict of guilty on all three counts. The trial court accepted the jury's verdicts, and referred appellant to the Adult Probation Department so that a pre-sentence investigation report and psychiatric evaluation could be completed.
The trial court held a sentencing hearing on August 27, 1997. In a judgment entry dated September 4, 1997, the trial court sentenced appellant to serve a one-year prison term on each count of gross sexual imposition, with the sentences to run consecutive to each other. Additionally, the trial court also concluded that appellant should be classified as a sexual predator for purposes of R.C. Chapter 2950.
From this judgment, appellant filed a timely notice of appeal with this court. He now asserts the following assignments of error for our consideration:
 "[1.] The defendant-appellant's constitutional rights to due process were prejudiced by the ineffective assistance of counsel.
 "[2.] The trial coutrt [sic] erred to the prejudice of the defendant-appellant when it allowed testimony of other acts with which the defendant-appellant was not charged, thus denying him due process of law.
 "[3.] R.C. 2950.09(B) is unconstitutionally vague, thus denying defendant-appellant due process of law.
 "[4.] The finding that the defendant-appellant is a sexual predator was against the manifest weight of the evidence.
 "[5.] By sentencing the appellant pursuant to sections 2967.11 and 2967.28 of the Ohio Revised Code, as amended by Senate Bill 269, the trial court relied on unconstitutional legislation and instituted an unlawful sentence."
 In his first assignment of error, appellant argues that he received ineffective assistance of counsel at trial. Specifically, appellant maintains that although his attorney filed a motion to suppress his statement given to police, he failed to properly support the motion with expert testimony concerning how a person who has been prescribed the drug Ritalin might be affected when he fails to take his medication. In addition, appellant also claims that his attorney was deficient in failing to brief the issue of whether he should have been sentenced under the law as it existed prior to S.B. 2.
The standard for determining whether or not a criminal defendant has been afforded his right to effective assistance is well-settled in Ohio. To be successful on such a claim, the criminal defendant must meet the two-pronged test originally articulated by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668, and adopted by the Supreme Court of Ohio in State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. See, also, State v. Glavic (May 18, 2001), Lake App. No. 99-L-194, unreported, 2001 Ohio App. LEXIS 2243, at 11-12.
First, a defendant must be able to show that his trial counsel was deficient in some aspect of his representation. Bradley at 141. This requires a showing that trial counsel made errors so serious that, in effect, the attorney was not functioning as the "counsel" guaranteed by both the United States and Ohio Constitutions. Id.
Second, a defendant must show that the deficient performance prejudiced his defense. Id. at 142. This requires a showing that there is "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 142, quoting Strickland at 694.
There is a strong presumption in Ohio that a licensed attorney is competent. State v. Smith (1985), 17 Ohio St.3d 98, 100. Accordingly, to overcome this presumption, a defendant must show that the actions of his attorney did not fall within a range of reasonable assistance. State v.Smith (Dec. 22, 2000), Portage App. Nos. 99-P-0039 and 99-P-0040, unreported, 2000 Ohio App. LEXIS 6115, at 18.
Furthermore, debatable strategic and tactical decisions will not form the basis of a claim for ineffective assistance of counsel, even if there had been a better strategy available. State v. Phillips (1995),74 Ohio St.3d 72, 85; State v. Nicholas (Dec. 23, 1999), Portage App. No. 98-P-0061, unreported, 1999 Ohio App. LEXIS 6265, at 7. In other words, errors of judgment regarding tactical matters do not substantiate a defendant's claim of ineffective assistance of counsel. Nicholas at 7-8.
More specific to this case, the decision of whether to call a particular witness falls within the scope of trial strategy and tactics, and is generally left to the sound discretion of the trial counsel.Smith, 2000 Ohio App. LEXIS 6115, at 18; Nicholas at 10. As a result, courts have traditionally been reluctant to find ineffective assistance in those cases where an attorney fails to call a particular witness.State v. Otte (1996), 74 Ohio St.3d 555, 565-566; Smith, 2000 Ohio App. LEXIS 6115, at 18; Nicholas at 10.
Turning to the case at bar, appellant argues that during the time he was questioned at the Lake County Sheriff's Department, his judgment was impaired because he had not taken his Ritalin. Based on his alleged condition, appellant believes that his trial attorney should have called an expert witness to testify about how a person who had not taken his medication could be effected. He claims that such testimony was critical because the only incriminating evidence other than his confession was the testimony of the victim, his daughter, whose credibility, appellant maintains, was put in question at trial.
We disagree and conclude that the failure to call such an expert witness did not amount to ineffective assistance of counsel. First, the record is quite clear that appellant was given the opportunity on several occasions to take his medication during the time he was being questioned. In fact, the officer conducting the interview, Detective Karen McKenna ("Detective McKenna"), even offered to allow appellant to go home and retrieve the medication if he did not have it with him. Appellant, for whatever reason, declined to take advantage of the offer.
Furthermore, nothing in the record suggests that appellant was actually impaired during the time he was questioned at the police department. At the suppression hearing, Detective McKenna testified that she did not detect anything in appellant's demeanor that would indicate he did not understand what was occurring, and appeared to be in complete control of his mental faculties. Thus, appellant has failed to show that expert opinion on how Ritalin affects a person would have necessarily helped his defense.
Next, appellant claims that his attorney was ineffective for failing to brief the issue of whether he should have been sentenced under the law as it existed prior to the passage of S.B. 2. In doing so, appellant argues that although his trial attorney orally requested that he be sentenced under pre-S.B. 2 law, his attorney never filed a written brief in support as requested by the trial court.[1]
The failure to file a written brief in the instant matter cannot be properly classified as ineffective assistance of counsel. While an attorney should assist the trial court when asked, the fact of the matter is that the court is ultimately responsible for correctly sentencing a defendant under the relevant law as it existed at that time. As a result, the actions of appellant's trial attorney, i.e., merely placing his request on the record, "did not fall below the required professional standard of reasonable representation." State v. Huckabee (Mar. 9, 2001), Geauga App. No. 99-G-2252, unreported, 2001 Ohio App. LEXIS 1122, at 30.
Because appellant was contending that he had received ineffective assistance of counsel, he was obligated to point to instances in the record to support his claim. Here, however, the record before this court does not contain any evidence to support appellant's allegations. That is to say, appellant has failed to provide this court with anything to suggest that his trial attorney was deficient, or that any alleged errors or omissions, had they not occurred, would have changed the outcome of his trial. Therefore, appellant's first assignment of error is not well-taken.
In assignment of error two, appellant argues that the trial court erred when it allowed the victim and appellant's wife to testify about conduct with which he was never charged. He maintains that such other acts evidence was unrelated to the offenses for which he was on trial, and was introduced solely to prejudice the jury against him. In the alternative, appellant argues that, even if the testimony was somehow relevant, its probative value was substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.[2]
It is well-settled that evidentiary rulings are within the broad discretion of the trial court and will not be disturbed on appeal absent a clear showing of an abuse of that discretion. State v. Robb (2000),88 Ohio St.3d 59, 68; State v. Pollard (Apr. 13, 2001), Ashtabula App. No. 99-A-0072, unreported, 2001 Ohio App. LEXIS 1753, at 6-7. The term abuse of discretion connotes more than a mere error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151,157.
Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Accordingly, "the question of whether evidence is relevant is ordinarily not one of law but rather one which the trial court can resolve based on common experience." State v. Lyles (1989),42 Ohio St.3d 98, 99. "Indeed, the Supreme Court of Ohio has observed that `the issue of whether testimony is relevant or irrelevant * * * is best decided by the trial judge who is in a significantly better position to analyze the impact of the evidence of the jury.'" State v. Simon (May 26, 2000), Lake App. No. 98-L-134, unreported, 2000 Ohio App. LEXIS 2272, at 13, quoting Columbus v. Taylor (1988), 39 Ohio St.3d 162, 164.
In the case at bar, we conclude that the trial court did not abuse its discretion by admitting the testimony in question because such evidence was relevant to the charges for which appellant was being prosecuted. To convict appellant of gross sexual imposition, the state was required to prove that he had sexual contact with another, not his spouse, by purposely compelling the other person to submit by force or threat of force. R.C. 2907.05(A)(1).[3] As part of its burden, then, the state had to show, beyond a reasonable doubt, that appellant's purpose or specific intention in touching the victim on proscribed areas of the body was sexual arousal or gratification of either him or the victim. Statev. Mundy (1994), 99 Ohio App.3d 275, 288.
Accordingly, for purposes of determining whether appellant's purpose or specific intention was arousal or gratification of sexual desire, the jury must necessarily consider the nature of the acts viewed in conjunction with all of the surrounding facts and circumstances. Id. Stated differently, whether the "touching was undertaken for the purpose of sexual arousal or gratification must be inferred from the type, nature, and circumstances surrounding the contact." Id. at 289.
This court has repeatedly observed that "evidence is relevant if it merely alters the probability of the existence or nonexistence of a fact properly before the trial court." Simon at 15. Here, the testimony at issue was certainly relevant because it helped the jury perceive from appellant's actions and the surrounding facts and circumstances whether his purpose or specific intention was arousal or gratification of sexual desire. As a result, the trial court did not abuse its discretion in finding that the testimony met the threshold requirement of relevancy under Evid.R. 401.
Appellant, however, further argues that even if the evidence was relevant, the trial court should have, nonetheless, excluded it under Evid.R. 403(A) because any probative value was substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Pollard at 7. We disagree.
After looking at the record before us, we conclude that there is nothing which suggests that the admission of the disputed evidence provided the jury with an improper basis upon which it returned its guilty verdicts against appellant, especially in light of his confession. Thus, the probative value of the evidence was not outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury, let alone substantially outweighed as required by Evid.R. 403(A).
Finally, appellant argues that the evidence was not admissible because it represented character evidence, which cannot be used to prove he had a propensity to commit the offenses charged.
Evid.R. 404(B) generally prohibits the state from submitting evidence of a defendant's prior bad acts, independent of and unrelated to the offenses for which he is on trial, to demonstrate that the accused acted in conformity with his bad character.[4] State v. Bey (1999),85 Ohio St.3d 487, 490. Such evidence is admissible, however, if: "(1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." State v. Lowe (1994), 69 Ohio St.3d 527, 530. See, also, R.C. 2945.59.[5]
"The purpose behind this rule is to prevent an accused from being placed in the unenviable position of having to defend him or herself for two distinct offenses at trial: those crimes which the accused is currently on trial for, and additional illegal activity that the accused allegedly committed in the past." State v. Kanetsky (June 11, 1999), Trumbull App. No. 97-T-0162, unreported, 1999 Ohio App. LEXIS 2636, at 11-12. When making this determination, the trial court must decide whether the evidence in question is being introduced solely to prove the accused's character and conforming conduct, or, in the alternative, whether it is being offered to prove some other relevant fact of consequence to the proceedings. State v. Davis (Dec. 31, 1998), Lake App. No. 97-L-246, unreported, 1998 Ohio App. LEXIS 6389, at 8.
Moreover, we recognize that "a criminal conviction cannot be based, in whole or in part, upon the `bad character of the defendant theory.'"Pollard, 2001 Ohio App. LEXIS 1753, at 8. Nevertheless, under Evid.R. 404(B) and R.C. 2945.59, evidence of other acts is admissible if it tends to prove a specific element of the crime charged. State v. Smith (1990),49 Ohio St.3d 137, 139-140.
Due to the "possible prejudicial effect that extrinsic acts evidence may have in the minds of the trier of fact, Evid.R. 404(B) and R.C. 2945.59
must be strictly construed against admissibility." Kanetsky at 14. However, as with other evidentiary rulings, the admissibility of prior acts is within the sound discretion of the trial court. Id.
Here, the testimony of the victim, as well as appellant's wife, regarding his prior conduct was probative of appellant's intent, and the absence of mistake or accident. The pattern of sexually inappropriate behavior engaged in by appellant makes it crystal clear that the charged acts were undertaken deliberately for appellant's own sexual gratification. Appellant's walking around the home nude, his repeated walking into the bathroom while the victim was in there, and forcing his daughter to change bathing suits while he watched, all relate to appellant's state of mind and show a complete absence of mistake or accident.
Nevertheless, even assuming that the testimony did not fall under one of the exceptions set forth in Evid.R. 404(B) or R.C. 2945.59, its admission did not constitute reversible error. Rather, at worst, it was harmless error in light of the other evidence introduced during appellant's trial pointing to his guilt. Davis at 15-16. See, also,Taylor, 39 Ohio St.3d, at 166 (holding that error in the admission of other acts testimony is harmless when there is no reasonable probability that the testimony contributed to the accused's conviction). As a result, appellant's second assignment of error has no merit.
Under his third assignment of error, appellant maintains that R.C. Chapter 2950 is unconstitutionally vague because it compels a court to make a preponderance determination based upon clear and convincing evidence. The Supreme Court of Ohio has already considered and expressly rejected this argument in State v. Williams (2000), 88 Ohio St.3d 513,533, wherein the court held that it was not inherently illogical for the statutory scheme to require a trial court to employ the "clear and convincing" evidential standard in determining whether it is "likely" that a defendant will commit another sexually oriented offense in the future. Accordingly, appellant's third assignment of error is not well-taken.
In assignment of error four, appellant argues that the trial court's determination that he is a sexual predator is against the manifest weight of the evidence. Appellant claims that the evidence presented by the state during the hearing did not comport with the Ohio Rules of Evidence and should not have been admitted. Moreover, appellant also contends that factors relied upon by the trial court do not clearly and convincingly show that appellant is a sexual predator, and that "the hearing was merely an opportunity for the trial court to `rubber stamp' a sexual predator determination."
First, appellant claims that the exhibits introduced by the state,i.e., a partial transcript from appellant's trial, the pre-sentence investigation report, and the psychiatric evaluation, should not have been admitted at the sexual predator hearing because the evidence was not properly authenticated under Evid.R. 901 and he did not have the opportunity to cross-examine the authors of the reports to challenge their accuracy. However, a review of the record shows that appellant never objected to the admission of this evidence. As a matter of fact, when arguing that appellant should not be classified as a sexual predator, appellant's attorney referenced the psychological evaluation to support his position. Thus, appellant has waived all but plain error with respect to the admission of this evidence. Crim.R. 52(B). See, also, State v.Jenks (1991), 61 Ohio St.3d 259, 282 (holding that in the context of a criminal case, a court of review should invoke the plain error doctrine with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice).
The Supreme Court of Ohio has already held that the rules of evidence do not strictly apply to sexual predator hearings. In reaching this conclusion, the Court observed that "Evid.R. 101(C) excepts application of the Rules of Evidence, including the hearsay rule, from certain proceedings, such as miscellaneous criminal proceedings." State v. Cook
(1998), 83 Ohio St.3d 404, 425. After looking at the proceedings excluded in Evid.R. 101(C), the Court further determined that "[a] sexual predator determination hearing is similar to sentencing or probation hearings where it is well settled that the Rules of Evidence do not strictly apply." Cook at 425. As a result, a trial court conducting a sexual offender hearing may rely upon reliable hearsay, such as a pre-sentence investigation report or a forensic report prepared by a psychologist.Id. See, also, State v. Head (Jan. 19, 2001), Lake App. No. 99-L-152, unreported, 2001 WL 46243.
With Cook and its progeny as our guideposts, we conclude that any error in admitting the unauthenticated documents, that otherwise appeared to be reliable and trustworthy, did not arise to the level of plain error. As we noted above, appellant does not challenge the authenticity of the documents in question. Nor has he argued anything on appeal to suggest that the outcome of the trial court's determination would have been different had the evidence not been admitted.
Furthermore, appellant had an opportunity to challenge the contents of the documents during the hearing, either by attacking the reliability of the documents themselves, or through the introduction of his own evidence. Appellant did not do this, and without more to substantiate his claim, we conclude that the trial court properly considered the submitted exhibits.
Next, appellant argues that the trial court's determination that he is a sexual predator is against the manifest weight of the evidence. Specifically, appellant claims that the state failed to introduce clear and convincing evidence that he is likely to reoffend.
R.C. 2950.01(E) defines a "sexual predator" as a person who has been convicted of a sexually oriented offense and is likely to engage in that type of behavior again in the future. In applying this definition, a trial court can classify an individual as a sexual predator only if it concludes that the state has established both prongs of the definition by clear and convincing evidence. See R.C. 2950.09(B)(3). Clear and convincing evidence is the measure or degree of proof which "will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
To assist a trial court in making its determination on whether or not a particular person is a sexual predator, R.C. 2950.09(B)(2) sets forth a list of nonexclusive factors that a court must consider when deciding whether to adjudicate an offender as a sexual predator. These factors include: (1) the offender's age; (2) the offender's prior criminal record; (3) the victim's age; (4) whether the underlying sexually oriented offense involved multiple victims; (5) whether the offender used alcohol or drugs to impair or incapacitate the victim; (6) whether the offender has previously participated in a rehabilitative program for sexual offenders; (7) any mental illness or mental disability of the offender; (8) the specific nature of the sexual conduct involved in the underlying sexually oriented offense; (9) whether the offender acted cruelly in committing the underlying sexually oriented offense; and (10) any additional behavioral characteristics that contribute to the offender's conduct.
In applying the foregoing factors, the appellate courts of this state have held that a finding of likely recidivism can be made even though a majority of the factors are not relevant in a given case. Head, 2001 WL 46243, at 4; State v. Fugate (Feb. 2, 1998), Butler App. No. CA97-03-065, unreported, 1998 Ohio App. LEXIS 286. Furthermore, it has been held that a trial court can give greater weight to one factor over another if it is warranted under the specific facts of the case. Statev. Bradley (June 19, 1998), Montgomery App. Nos. 16662 and 16664, unreported, 1998 Ohio App. LEXIS 2744.
Moreover, when reviewing a claim that a judgment is against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts, the trier of fact lost its way and created a miscarriage of justice. State v. Martin (1983), 20 Ohio App.3d 172, 175. See, also,State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
In the instant case, the record clearly shows that the trial court considered each of the factors under R.C. 2950.09(B)(2) and concluded that there was clear and convincing evidence to support a determination that appellant is a sexual predator. Specifically, the trial court found that appellant had committed three sexually oriented offenses, i.e., gross sexual imposition, and that he was likely to engage in that type of behavior again in the future.
To support this second conclusion, the trial court found the following factors to be relevant: (1) appellant was thirty-eight years old; (2) the victim was between the ages of thirteen and fourteen at the time the offenses were committed; (3) appellant committed multiple offenses against the victim over a two year period of time; (4) the offenses involved appellant's daughter which facilitated their commission; (5) appellant had refused to take responsibility for his actions and tried to rationalize his conduct; (6) appellant exhibited signs of diminished mental capacity; and (7) during the commission of the offenses, appellant displayed cruelty due to the nature of his relationship with the victim.
After reviewing the record in this case, we conclude that the trial court's decision finding appellant to be a sexual predator is supported by clear and convincing evidence and is not against the manifest weight of the evidence. The facts show that on three separate occasions, appellant sexually assaulted his teenage daughter. Moreover, the nature of the sexual conduct demonstrated a pattern of abuse, which was facilitated by appellant's familial relationship with the victim.
Maybe most important for our analysis, appellant has steadfastly refused to accept responsibility for his conduct, and instead, minimizes his actions. According to appellant, there was never any sexual arousal or sexual gratification related to the incidents, and he believes that his wife and daughter exaggerated what actually happened.
As this court has noted in similar situations, this type of "deviant behavior shows such a disregard for our most basic taboos that the risk of recidivism must be considered great." State v. Heym (Dec. 22, 2000), Lake App. No. 99-L-192, unreported, 2000 WL 1876648, at 4. The young age of the victim, combined with her relationship with appellant and his inability or refusal to appreciate his actions, all attest to appellant's likelihood of engaging in similar acts in the future. Accordingly, there was some competent, credible evidence supporting a firm belief that appellant had committed a sexually oriented offense and was likely to commit another such offense in the future.[6] Appellant's fourth assignment of error is without merit.
In his final assignment of error, appellant presents two issues for our review. First, he raises several different challenges to the constitutionality of R.C. 2967.11. In essence, appellant claims that the possible application of bad time sanctions would violate many of his constitutional rights.
The Supreme Court of Ohio has already considered this very issue. InState ex rel. Bray v. Russell (2000), 89 Ohio St.3d 132, 135-136, the Court held that R.C. 2967.11 was unconstitutional because the imposition of additional jail time for crimes committed while in prison violated the doctrine of separation of powers. The decision in Bray is consistent with the prior opinion from this court in White v. Konteh (Mar. 23, 1999), Trumbull App. No. 99-T-0020, unreported, 1999 WL 587976. As a result, the trial court's reference to R.C. 2967.11 in the sentencing judgment was improper.
Appellant also submits that R.C. 2967.28, which concerns post-release control, is also unconstitutional. In doing so, appellant raises the following arguments: (1) R.C. 2967.28 violates his right to due process; (2) R.C. 2967.28 violates the prohibition against double jeopardy; and (3) R.C. 2967.28 violates his right to equal protection under the law.
The Supreme Court of Ohio has recently held that R.C. 2967.28 does not violate the Due Process Clauses of the United States or Ohio Constitutions. Woods v. Telb (2000), 89 Ohio St.3d 504, paragraph one of the syllabus. Accordingly, appellant's first argument has no merit. Moreover, in light of the Supreme Court's holding in Woods, we also conclude that appellant's submission that R.C. 2967.28 violates his right to equal protection is similarly meritless.
As for whether R.C. 2967.28 violates the prohibition against double jeopardy, appellant argues that the mere imposition of post-release control following the completion of his prison sentence unconstitutionally punishes him twice for the same conduct. We disagree.
Although Woods was primarily concerned with whether R.C. 2967.28
violated the separation of powers doctrine and a criminal defendant's right to due process of law, the Supreme Court included dicta that is relevant to the question before this court. When comparing the prior system of parole with the current system of post-release control, the Court noted that the imposition of post-release control is part of the original judicially imposed sentence. Woods at 512. Put another way, when a criminal defendant is sentenced to a term of post-release control, he or she is not being given additional punishment despite the fact that it does have significant restrictions; rather, post-release control is part and parcel of the original sentence.
However, in State v. Martello (Apr. 20, 2001), Ashtabula App. No. 2000-A-0026, unreported, 2001 WL 409508, at 3, we held that "when a defendant is sentenced for a violation of his post-release control, and imposition of the sentence creates a situation where the defendant is forced to serve more than his original sentence, jeopardy attaches and precludes a conviction on the charge of escape." That is, when a person is sentenced to additional time in jail, that time cannot be considered a mere reinstatement of a term of his original sentence because the original sentence had already been served in its entirety. Id.
After reconsidering Woods as it relates to R.C. 2967.28 and double jeopardy, we conclude that the underlying logic supporting our decision in Martello was erroneous and should, therefore, be overturned. As we noted above, the Supreme Court has stated that post-release control is part of the original sentence. As such, the violation of a condition of post-release control, and any subsequent sanctions, is part of the punishment for the original criminal conduct. Accordingly, given that post-release control is an element of the criminal defendant's original sentence, it follows that punishment stemming from a post-release control violation would never result in double jeopardy. Appellant's fifth assignment of error has merit to the limited extent indicated.[7]
Based on the foregoing analysis, appellant's first, second, third, and fourth assignments of error are not well-taken. However, appellant's fifth assignment of error has merit to the limited extent indicated. As a result, the judgment of the trial court is affirmed in part and reversed in part, and the matter is remanded for further proceedings consistent with this opinion. Specifically, the trial court is instructed to vacate its prior sentencing judgment and issue a new judgment that does not contain any reference to the imposition of bad time. In all other respects, the judgment of the trial court is affirmed.
FORD, P.J., NADER, J., concur.
[1] S.B. 2 "effected significant changes in Ohio's criminal code, modifying the classifications of criminal offenses and corresponding sentences." State v. Rush (1998), 83 Ohio St.3d 53, 55. However, the Supreme Court of Ohio has held that the amended sentencing provisions of S.B. 2 are only applicable to those crimes committed on or after its effective date. Rush at paragraph two of the syllabus.
[2] The disputed evidence included testimony that appellant had forced the victim to change bathing suits in front of him, that appellant had asked the victim to look at him nude, and that appellant would often walk into the bathroom while the victim was bathing.
[3] "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
[4] Evid.R. 404(B) provides:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
[5] R.C. 2945.59 states:
 "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
[6] Although R.C. 2950.09 does not require that the trial court refer to each factor when making a sexual predator determination, the court is required to provide a "general discussion" of the relevant criteria so that an appellate court can conduct a meaningful review of the decision.State v. Randall (2001), 141 Ohio App.3d 160, 165-166. That is, a trial court should "discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism." State v. Eppinger (2001), 91 Ohio St.3d 158, 166.
[7] We would note that on September 26, 2001, the Supreme Court of Ohio accepted Martello for review.